STATE OF NORTH CAROLINA v. SIDNEY RICHARD BROWN

No. 7425SC989

(Filed 5 March 1975)

1. **Burglary and Unlawful Breakings § 5— break-in of drug store — suf- ficiency of evidence**

    Evidence was sufficient to be submitted to the jury in a prosecu- tion for felonious breaking and entering and possession of burglary tools where it tended to show that an officer apprehended defendant inside a drug store, a stack of drugs was on a counter within arm's reach of defendant when he was apprehended, and two crowbars and other tools were found near defendant at the crime scene.

2. **Burglary and Unlawful Breakings § 10— possession of burglary tools — tools not in defendant's actual possession — admission proper**

    In a prosecution for breaking and entering and possession of burglary tools, the trial court properly admitted into evidence burglary tools found at the scene, though they were not found in defendant's actual possession, where the State's evidence placed defendant in close proximity to the tools and evidence tended to show that entry had been gained to the building and to the narcotics cabinet by use of the tools found.

3. **Criminal Law § 168—jury charge — one improper statement — charge as a whole correct**

    Though at least one statement of the trial court's charge, read out of context and as an isolated statement, might be said to present an erroneous statement of the law, that statement was harmless error since the charge as a whole was proper.

APPEAL by defendant from *Thornburg, Judge.* Judgment en- tered 12 July 1974 in Superior Court, CALDWELL County. Heard in the Court of Appeals 13 February 1975.

Defendant was charged with and convicted of feloniously breaking and entering a building with intent to commit larceny therein and feloniously and without lawful excuse having bur- glary tools in his possession.

The State's evidence tended to show: Officer Brown was, on 25 March 1974, patrolling on the Wilkesboro Road in Lenoir. He received a radio call that the alarm had gone off at Sav-Mor Drug, Inc. He immediately responded to the call as did Lt. Harless, who was on the same shift. Harless went to the rear of the building and Brown went to the front. Brown found the front door pried open and observed the "defendant and two other subjects inside." They saw him and ducked behind a counter. He entered and followed them into a back room which was dark. He could hear them trying to remove the bar across the back door. One removed the bar, opened the door, and ran out. From the light from the outside, Brown could see the defendant and another at the back door. Harless called for the fleeing one to stop, and Brown heard two shots—while he was attempting to locate the two still in the store. He found the defendant hiding in a corner and the other subject under a counter. The other subject was Raymond Gibson. On the counter under which Gibson was hiding was "a rather long list of drugs," and these were within "arms reach of the defendant on the counter stacked up." Brown also found two crowbars and other tools used to gain entry. These were found near the defendant. Both defendant and Gibson were arrested. Gibson died prior to trial.

Defendant testified in his own behalf. His testimony was that on the night in question he was hitchhiking, having come from California to North Carolina, had gotten a ride to Lenoir, and was walking down Highway 321-A to Lincolnton trying to get a ride when he came to Sav-Mor Drugs. He saw someone in the store, thought it was open, and went in to buy a pack of cigarettes. When he "got about half-way in the door, Officer Brown came in with his pistol and told me to get up against the wall." Brown told defendant that he was under arrest and when defendant asked him what the charge was he was told "public drunkenness right now."

The jury found the defendant guilty as charged on both counts. The court consolidated the cases for the purpose of judgment and ordered imprisonment for the term of 10 years. Defendant appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General John R. B. Matthis, for the State.*

*L. H. Wall for defendant appellant.*

CLARK, Judge.

Prior to trial defendant made several written motions. He moved that the charges be dismissed because his request to be put in a cell with Gibson had been denied, because the prison authorities had not prevented Gibson from committing suicide, and because he had been denied his request to have a court reporter record the testimony at his preliminary hearing. The record discloses that defendant was placed in jail on 25 March 1974 and called District Court Judge Dale requesting the appointment of counsel and a hearing on bond reduction. Judge Dale appointed counsel and had a hearing on defendant's request for a court reporter to record the testimony at his preliminary hearing. The court denied the request stating that the recording system used in Juvenile and Domestic Relations Court would be made available and directed that the preliminary hearing be set at the earliest practicable time. These entries were made 28 March 1974, only three days after defendant's arrest. Subsequently, defendant wrote the judge expressing dissatisfaction with his appointed counsel and requesting that he be released and that the court appoint another lawyer. The court complied with the request as to appointment of another lawyer. On 22 April 1974, defendant wrote the judge requesting that he be confined in a cell with Gibson so they could prepare their joint defense. On 13 May 1974, defendant waived preliminary hearing and the judge bound him over for trial. On 28 May 1974, defendant filed a written motion requesting dismissal of the charge. In this motion, he recites that on 6 May 1974 Gibson committed suicide in the Caldwell County jail. He abandons his contention that he should have been confined with Gibson to prepare their joint defense, and for the first time contends that Gibson would have testified that defendant was innocent and Gibson would have accepted the full blame for the breaking and entering and larceny and would have testified that the burglary tools were his. In this motion defendant says that the sheriff and jailers should have and could have prevented Gibson's death and their failure to do so deprived defendant of his right to secure the attendance of a witness who possessed evidence favorable to defendant's defense and that Gibson was the only person who could have exonerated defendant.

When defendant's cases were called for trial, and after arraignment and plea, the court directed that the reporter let the record reflect that the court had thoroughly reviewed and

considered defendant's pretrial motions, those of counsel and counsel's brief. The court denied all the motions. The record lists 11 exceptions to the court's action, among them being exceptions to the court's failure to hear the defendant and to make findings of fact. We do not think it necessary to consider each exception separately. Suffice it to say that in our opinion the lack of prejudicial error is too obvious to require discussion.

[1] At the close of the State's evidence and again at the close of all the evidence, defendant moved for dismissal as of nonsuit and brings forward his exceptions to the court's denial of his motions. The evidence is plenary to survive the motions. These assignments of error are overruled.

[2] Defendant also assigns as error the introduction into evidence of the burglary tools found in the drug store contending that they were not tied to defendant's use of them to gain entry to the building. The evidence for the State placed defendant in close proximity to the tools. According to the State's evidence, he ran and attempted to flee from the rear of the building and hid when this was not successful. The evidence was that entry had been gained to the building and to the narcotics cabinet by use of the tools found. It is difficult to see how the court could have failed to deny defendant's objection to the introduction of these tools in evidence. It was not necessary that the State show that the tools were found in defendant's actual possession. *State v. Lovelace,* 272 N.C. 496, 158 S.E. 2d 624 (1968). They were certainly relevant and admissible. The weight to be given the evidence was for the jury.

[3] Finally, defendant contends the court committed prejudicial error in its charge to the jury. Even though defendant has failed to except properly to any portion of the charge, we have considered the charge and are of the opinion that the charge taken contextually and read as a whole fairly and clearly presents the law to the jury. We concede that at least one statement, read out of context and as an isolated statement, might be said to present an erroneous statement of the law. However, when considered in the context of the charge as a whole, it had no prejudicial effect and was, therefore, harmless error.

> " 'The charge of the court must be read as a whole . . ., in the same connected way that the judge is supposed to have intended it and the jury to have considered it . . . .' *State v. Wilson,* 176 N.C. 751, 97 S.E. 496 (1918). It will

be construed contextually, and isolated portions will not be held prejudicial when the charge as whole is correct. *State v. Cook*, 263 N.C. 730, 140 S.E. 2d 305 (1965); *State· v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334 (1963); *State v. Taft*, 256 N.C. 441, 124 S.E. 2d 169 (1962). If the charge presents the law fairly and clearly to the jury, the fact that some expressions, standing alone, might be considered erroneous will afford no ground for reversal. *State v. Hall*, 267 N.C. 90, 147 S.E. 2d 548 (1966)." *State v. Lee*, 277 N.C. 205, 214, 176 S.E. 2d 765 (1970).

These assignments of error are overruled.

Defendant's remaining assignments of error are formal and have been discussed previously. They are overruled.

Defendant has had a fair trial, free from prejudicial error and wherein all rights guaranteed by the Constitution of this State and of the United States were protected.

No error.

Judges BRITT and ARNOLD concur.