STATE OF NORTH CAROLINA v. TIMITHY RAY GAINEY

No. 7619SC81

(Filed 16 June 1976)

1. **Automobiles § 46— opinion testimony as to speed**

   While the period of time during which two witnesses observed defendant's automobile as it approached an intersection where the collision in question occurred was brief, it was of sufficient duration to permit the witnesses to state opinions that defendant's speed exceeded 35 mph as he entered the intersection.

2. **Automobiles § 113— intersection accident — involuntary manslaughter**

   The evidence was sufficient for the jury in a prosecution for involuntary manslaughter arising out of an intersection collision where it tended to show that defendant failed to heed a stop sign at the intersection, defendant was traveling in excess of 35 mph as he entered the intersection, and the brakes on defendant's car were working properly contrary to defendant's contention that he had pumped the brake pedal repeatedly but that the brakes would not function.

3. **Automobiles § 114— involuntary manslaughter — exceeding safe speed — insufficiency of evidence**

   In a prosecution for involuntary manslaughter growing out of an intersection collision, the trial court erred in submitting the case to the jury on the theory that defendant was driving faster than reasonable and prudent under existing conditions in violation of G.S. 20-141(a) where there was no evidence of the posted speed limit and the court properly charged that the jury would have to assume the legal limit was 55 mph, the evidence tended to show that defendant was traveling approximately 35 mph when he entered the intersection, and there was no evidence as to road conditions other than defendant's testimony as to the course of the road he was traveling.

**4. Automobiles § 114— involuntary manslaughter — failure to stop for stop sign — instructions**

The trial court erred in instructing the jury that a mere failure to stop for a stop sign in violation of G.S. 20-158, proximately causing death, would warrant a conviction of involuntary manslaughter.

Judge VAUGHN dissenting.

APPEAL by defendant from *Collier, Judge.* Judgment entered 4 December 1975 in Superior Court, ROWAN County. Heard in the Court of Appeals 10 May 1976.

Defendant was tried on a bill of indictment charging him with manslaughter in the death of Mrs. Carrie Freeze on 7 October 1973. He pled not guilty and the evidence presented by the State tended to show:

At around 8:00 p.m. on said date, Julia Ann Freeze was driving a pickup truck with a camper attached, at approximately 30 m.p.h., in a westerly direction on West C Street in Kannapolis. Her mother, Mrs. Carrie Freeze, was riding in the camper. As they approached the point where Winona Street entered C Street in a "T" intersection, defendant failed to heed a stop sign on Winona Street and drove into the intersection from their right, resulting in a collision between the pickup and his vehicle. Mrs. Carrie Freeze died some three weeks later from injuries she received in the collision.

Just prior to the collision Vickie and Wayne Dunn were riding in a vehicle traveling west on C Street immediately behind the vehicle occupied by the Freezes. They observed for a few moments the lights of the vehicle operated by defendant as it approached the intersection and, in their opinions, defendant's speed exceeded 35 m.p.h. as he entered the intersection.

The highway patrolman who investigated the accident observed that defendant had a moderate odor of alcohol on his breath but gave no testimony tending to show that defendant was under the influence of intoxicants. He examined the brakes on defendant's vehicle by depressing the brake pedal; it had "a full brake pedal" and did not go to the floor.

Defendant testified that when he approached the intersection, he pushed the brake pedal but the brakes would not work; that he pumped the pedal repeatedly but still the brakes would not function. He admitted drinking some beer that afternoon

State v. Gainey

and also admitted that he had been convicted of numerous traffic violations.

The jury found defendant guilty of involuntary manslaughter and from judgment imposing prison sentence, he appealed.

*Attorney General Edmisten, by Special Deputy Attorney General John R. B. Matthis, and Associate Attorney Jo Anne Sanford Routh, for the State.*

*Davis, Ford and Weinhold, by Robert M. Davis, for defendant appellant.*

BRITT, Judge.

[1] Defendant contends the trial court erred in permitting the witnesses Vickie and Wayne Dunn to state opinions as to the speed of defendant's automobile as it approached the intersection where the collision occurred. We find no merit in this contention. While the period of time that they observed defendant's approaching automobile was brief, we think it was of sufficient duration for them to form opinions as to speed. *State v. Clayton,* 272 N.C. 377, 158 S.E. 2d 557 (1968). Furthermore, when the opinions of the witnesses that defendant was "exceeding" 35 m.p.h. is considered along with defendant's testimony that he "was running around 35 miles per hour," we can perceive no prejudice to defendant.

[2] Defendant contends the trial court erred in denying his motions for nonsuit. We consider only the motion interposed at the conclusion of all the evidence, 3 Strong, N. C. Index 2d, Criminal Law § 176, and hold that the evidence was sufficient to survive the motion.

To survive the motion for nonsuit, the State had the burden of showing culpable negligence on the part of defendant, and that such negligence proximately caused the death of Mrs. Freeze. Defendant raises no question regarding proximate cause but strenuously argues the absence of proof of culpable negligence. The established law in this jurisdiction with respect to culpable negligence is well summarized in 1 Strong, N. C. Index 2d, Automobiles § 110, as follows:

> "Culpable negligence in the law of crimes is something more than actionable negligence in the law of torts, and is such recklessness or carelessness, proximately resulting

in injury or death, as is incompatible with a proper regard for the safety or rights of others.

"The violation of a safety statute regulating the use of highways does not constitute culpable negligence unless such violation is intentional, wilful, or wanton, or unless the violation, though unintentional, is accompanied by recklessness or is under circumstances from which death or injury to others might have been reasonably anticipated. But the inadvertent or unintentional violation of a safety statute, *standing alone,* does not constitute culpable negligence." (Emphasis added.)

When the evidence presented in the instant case is considered in the light most favorable to the State, we think it was sufficient to take the case to the jury.

Defendant contends the trial court erred in its instructions to the jury. We think this contention has merit and that the errors were sufficient to entitle defendant to a new trial.

In its instructions the court charged on the theory that the evidence established *prima facie* that defendant (1) was driving faster than was reasonable and prudent under existing conditions, a violation of G.S. 20-141(a), and (2) drove into the intersection without stopping in obedience to a duly erected stop sign, in violation of G.S. 20-158. While we agree that the evidence tended to show a stop sign violation, we do not think the evidence was sufficient to show a violation of G.S. 20-141(a).

[3]    The record reveals that on the night in question Winona Street, for approximately three-tenths of a mile before it intersected with C Street, was comparatively straight and flat and that the night was clear and dry with a temperature of about 70 degrees. There were no traffic or streetlights at the intersection. Most of the evidence regarding Winona Street was provided by defendant who testified that he entered that street at a point more than five-tenths of a mile from the intersection; that he traversed a series of curves within the first two-tenths of a mile traveled; but thereafter the road straightened and ran true for more than three-tenths of a mile before intersecting with C Street. There was no evidence as to the posted speed limit and His Honor properly charged that the jury would have to assume the legal limit was 55 m.p.h. Defendant testified, as did witnesses for the State, that his speed just prior to impact

was approximately 35 m.p.h. There was no other evidence as to speed or road conditions and the investigating officer indicated a lack of familiarity with the area. This evidence affords no sound basis for instructions on violation of G.S. 20-141(a). *State v. Weston,* 273 N.C. 275, 159 S.E. 2d 883 (1968). It was error to submit a case to the jury on a theory not supported by the evidence. *State v. Hollingsworth,* 263 N.C. 158, 139 S.E. 2d 235 (1964).

The trial court's mandate to the jury included the following:

> "So I charge that if you find from the evidence beyond a reasonable doubt that on or about October 7, 1973, at about 7:55 p.m., Timithy Ray Gainey intentionally or recklessly drove his motor vehicle at a speed that was greater than reasonable and prudent under the conditions then and there existing, *or* drove his vehicle through a stop sign without braking his vehicle to a stop, thereby proximately causing the death of Carrie Freeze, and that the violation or violations did not result from brake failure on the defendant's car, it would be your duty to return a verdict of guilty of involuntary manslaughter." (Emphasis ours.)

[4] In addition to the reason stated above, we think the quoted instruction was erroneous for the additional reason that it could have left the impression with the jury that a mere violation of G.S. 20-158, proximately causing death, would warrant a conviction of involuntary manslaughter. Clearly this is not the law. *See State v. Sealy,* 253 N.C. 802, 804, 117 S.E. 2d 793, 795 (1961), holding that there must be "[a]n intentional, wilful or wanton violation of a statute or ordinance, designed for the protection of human life or limb which proximately results in injury or death . . ." to constitute culpable negligence.

For the reasons stated, defendant is awarded a

New trial.

Judge ARNOLD concurs.

Judge VAUGHN dissents.

Judge VAUGHN dissenting.

I vote to affirm the judgment. Evidence that defendant, in the nighttime, approached and entered the intersection at a speed in excess of 35 miles per hour is, in my opinion, some evidence of driving at a speed greater than reasonable and prudent under the circumstances. I also believe the judge made it clear to the jury that to find defendant guilty they must find that his conduct was intentional rather than unintentional, inadvertent or accidental.